## AMERICAN MERCHANTS' UNION EXPRESS CO.

*v.*

## HORACE H. WILLSIE.

1. FRAUD—*title to goods obtained, not valid.* A person who obtains the possession of goods by fraud, acquires no valid title to them, and can vest none in another person.

2. Goods were sent by express, marked C. O. D., addressed to a party who was doing business as a merchant. When notified of the arrival of the goods, he wished to get them without paying the amount marked on them for collection, but was told by the agent of the express company that he had orders not to deliver goods marked C. O. D. until the money was paid. He then represented to the agent that he was able to pay all his debts in an hour, and that his check was as good as gold, and that it would be paid when due; and on the strength of these representations, which were false, and known by him to be so, he induced the agent to let him have the goods and take a check for the money, dated fifteen days ahead, knowing that he was then bankrupt, and would have no funds in the bank to pay the check: *Held,* that the goods were obtained by fraud, and that no title passed, and that the company were entitled to recover them back.

3. Where one obtains the possession of property by fraud, it can be reclaimed as against his creditors whose debts existed before the goods were obtained by him, and were not created upon the faith of the goods.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. F. S. MURPHY, and Mr. F. F. COOK, for the appellant.

Messrs. WILLIAMS, MCKENZIE & CALKINS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was replevin, in the Knox circuit court, by the American Merchants' Union Express Company against Horace H. Willsie, for certain goods and merchandise, taken by him, as a constable, on execution against one John A. Marshall and in favor of John B. Ellison & Sons, which execution was

pleaded by the defendant in justification of the taking. There was a plea, also, of property in Ellison, and on these issues were made up and tried by a jury, resulting in a verdict for defendant. A motion for a new trial was denied, and an appeal taken by the plaintiff, who complains that the verdict is contrary to the law and the evidence, and that the jury were misdirected.

The only question of any importance made on the record is this : Were the goods obtained by Marshall by fraud, and as a corollary, if they were, could a judgment creditor of Marshall acquire a lien on them by the levy of a *fieri facias*?

The prominent facts are, that the goods were sent by a New York mercantile firm. directed to Marshall, at Galesburg. marked C. O. D. ; amount of package, six hundred and ninety-six dollars and forty-six cents. The package had been in the express office a month or more, and one George M. McNamare was the agent in the office. He and Marshall frequently spoke about the package, the latter expressing a great desire to get it, to supply his customers, he doing a large business, apparently, as a merchant tailor, and there were goods in the package much wanted, to supply his customers. The agent declined putting them in the possession of Marshall until the amount due upon them was paid, and told Marshall that his positive instructions were not to deliver C. O. D. packages without the money was first paid. So the matter remained until about the fifth day of November, 1872, when, by the representations of Marshall that his check was as good as gold, and that he could pay all his debts in an hour, and when his store showed a full stock, and he himself apparently in good credit, doing a good business, the agent was prevailed upon to suffer Marshall to take the goods, on Marshall's giving his check for the amount, payable fifteen days thereafter, on the First National Bank. It was dated fifteen days ahead, on the assurance that funds would be in the bank at that time to meet it, and the check was as good as gold.

The proof is conclusive, that on the day Marshall made this check there was no probability, not the slightest, that he would have funds in the bank, or anywhere else, on that day, for on that very day he was more than twenty thousand dollars in debt, and executions out against him for near sixteen hundred dollars. He was a bankrupt on that day, and he knew it, yet, by false affirmations, which appearances seemed to verify, he induced the agent to violate his instructions, and which were known to him, and thus got possession of the goods without the payment of one dollar, and, at the time he got the possession, without any prospect that his check would be paid.

It is urged, fraud is not to be presumed. There is no necessity for presumption. Here are the facts proved, and they show the intent, which was to get possession and control of this package of goods. It may be said the agent was too credulous and too confiding. That may be so, but the surroundings of Marshall, in possession of a stock of goods and in the apparent confidence of his neighbors, lending him money, and no unfavorable reports about him, may be some sort of apology for this confidence and his reliance upon these false representations. The agent might have been more vigilant, and a true business man would have been. Still, that consideration does not relieve the transaction from the taint upon it.

The goods, then, having come into the possession of Marshall by his fraud, he thereby acquired no valid title to them, and could vest none in another person. This is settled doctrine. These creditors, with their executions, were not creditors on the faith of these goods, as a fund out of which their claims were to be paid, for they became creditors long before the goods came into the possession of Marshall, so they are in a position no worse than they were before that occurrence, and have nothing of which to complain. A title to possess property acquired by fraud is no valid title to the property, and none can be conveyed. No man can confer upon another

a better title than he has himself. A title acquired by fraudulent means is no title.

We do not think the question of fraud was fully presented to the jury in the instructions given on behalf of appellee. In the first instruction, the fact of fraud is wholly ignored, and the attention of the jury called to previous transactions of the agent with Marshall, in delivering to him goods marked C. O. D. without first receiving payment therefor. It does not appear in these previous transactions there were any false representations, but the argument based on the fact is, that such acquiescence by the agent is the acquiescence of the company. Several decisions of this court are cited, holding that, under certain circumstances, insurance companies will be bound by the acts of their agents, if done, seemingly, within the scope of their powers, though it may be in the absence of power. Those were cases where the assured were not informed of the extent of the authority conferred upon the agent. Here, the extent of power and authority of the agent was known to Marshall, it having been expressly disclosed to him, and he knew the agent was acting without any authority.

We do not see any ground on which this judgment can be sustained, and it must be reversed, and remanded with directions to the circuit court to award a *venire de novo.*

We omitted to remark upon the error assigned upon the amendment allowed to the execution. The omission of the final "s" in sons was clearly clerical, and it was in furtherance of justice to allow the amendment, as it could work no injury to the plaintiff and smoothed a difficulty in the way of the defendant.

For the reasons given, the judgment is reversed, and the cause remanded for a new trial.

*Judgment reversed.*