## Charles Schlesinger and Elias B. Schlesinger v. The West Shore R. R. Co., Grand Trunk R. R. Co. and Wabash R. R. Co.

1. COMMON CARRIERS — *Goods Shipped to One Person in Care of Another.*—Goods shipped to one person, as consignee, in care of another, are to be delivered to the consignee, and in case he can not be found, then to the one in whose care they are shipped.

2. SAME—*Delivery of Goods to, Constitutes Receipt by Purchaser.*—Delivery of goods to a common carrier for conveyance to the purchaser or to a place designated by him, constitutes an actual receipt by the purchaser.

3. STOPPAGE IN TRANSITU—*Remedy of Consignor after Delivery of Goods to the Carrier.*—By the consignment and delivery of the goods to the carrier to be conveyed to the consignee, without condition or qualification, the property in the goods becomes vested in the assignee, and can be affected, so far as the consignor is concerned, only by the right of stoppage *in transitu.*

Assumpsit.—Common counts.  Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1899.  Affirmed.  Mr. Justice FREEMAN dissenting.  Opinion filed April 4, 1900.

EDWARD MAHER and ROBERT F. KOLB, attorneys for appellants.

WINSTON & MEAGHER, attorneys for the West Shore R. R. Co.; S. A. LYNDE, attorney for the Grand Trunk Railroad Co.; GEORGE B. BURNETT and LEE & HAY, attorneys for the Wabash Railroad Co., appellees; FREDERICK R. BABCOCK and EDWARD S. WHITNEY of counsel.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The appellees were sued by the appellants to recover the

value of five barrels of whiskey, shipped from New York city by the appellants, November 10, 1890, by the so-called "Hoosac Tunnel Fast Freight Line," to a consignee in Chicago.

At the close of plaintiffs' case the jury were directed by the court to return a verdict finding the issues for the defendants, the appellees.

A bill of lading was issued for the goods and delivered to appellants, which, in so far as is material to the case at bar, was as follows :

"HOOSAC TUNNEL FAST FREIGHT LINE,
via West Shore, Grand Trunk, Wabash Railroad and connections.

NEW YORK, Nov. 10th, 1890.

Received from C. S. Schlesinger the property described below : * * * marked, consigned and destined as indicated below, which said company agrees to carry to the said destination. * * *

Marks, consignees and destination.

| B. H. KEMPER, | Description of articles. |
| Chicago, Ill. | 5 brls. whiskey. |
| Care Berkenfield Ex. | F. W. RICHARDSON, agent." |

It was admitted that the whiskey was delivered by the appellee Wabash Railroad Company, November 18, 1890, to B. H. Kemper (at Chicago), without the bill of lading.

One of the conditions on the face of the bill of lading was to the effect that if the word " order " should not be written immediately before or after the name of the consignee, the property might, at the option of the carrier, be delivered without the production or surrender of the bill of lading.

It was proved by one Alexander Berkenfield that he worked for appellants in November, 1890, and had, previously to that time, received over the Wabash road numerous other barrels of whiskey for appellants, and that he took and presented to the " notice clerk " of the Wabash road, in the month of November, 1890, "a certain bill of lading;" and it was attempted to be proved by the same witness that he was the same as " Berkenfield Express," to whose care the goods were consigned, and that he told the

notice clerk that the goods were consigned to his care and
should be delivered to him as agent for appellant, but the
questions were objected to and the court refused to allow
them to be answered.

We have carefully examined all the questions that were
propounded to the witness to which answers were not per-
mitted, in order to see what favorable answers thereto, if
given, would have tended to prove, and though every intend-
ment most favorable to the appellants be given to such
questions and disallowed answers, they would not tend to
establish that the purported conversation between the wit-
ness and the notice clerk was held before the consigned
goods were delivered to Kemper.

One of the appellants testified that the goods should have
arrived in Chicago about November 16th, if they were
shipped on the tenth—the date of the bill of lading.

Possibly there may be a reasonable inference, from one
of the questions put to the witness, that the expected
answer would have been that the conversation occurred
after the goods reached Chicago, but, *non constat*, it was
not until after they were delivered. to Kemper, on Novem-
ber 18th. We are considering this aspect of the case
upon the theory that a sufficiently early notice to the car-
rier not to deliver to Kemper would have made a subsequent
delivery to Kemper an act for which appellees or some of
them would have been liable to appellants, which is a doubt-
ful proposition, to say the least of it.   But holding that by
no reasonable inference can such notice to the carrier be
found to have been given before the delivery to Kemper,
the purely law question remains, to whom were the goods
consigned, and what is the right of a carrier to deliver to a
consignee, without the production of the bill of lading.

The case of Chicago & Northwestern Railway Company
v. Merrill, 48 Ill. 425, is very similar in its facts to this one.

There the consigned goods were marked: " John L.
Page, Winnebago, goods by R. R. care of American Express
Co., C. O. D.," and they were delivered to Page by the rail-
road company.

Page turned out to be insolvent, and the consignor sued

the railroad company for the value of the goods, and recovered in the Circuit Court; but the Supreme Court reversed the judgment, holding that with the safe delivery of the goods to Page, the liability of the railroad company ended. In the course of the opinion, in speaking of the fact that besides the name of Page, as consignee, the words "care of American Express Co." were written upon the box, it is said :

"We understand these words upon the box as merely indicating that if Page, the consignee, could not be found to receive the goods, the appellant (Ry. Co.) might deliver them into the care of the express company. But Page did appear, and claimed the goods, and the appellant delivered them to him, as it was its duty to do."

Now, that case being in point, Kemper, in this case, was the consignee, and being so, the title to the whiskey was vested in him, subject only as between himself and the consignor, to the right of stoppage *in transitu.*

Giving to the questions propounded to Berkenfield the full effect of testimony upon all the subjects inquired about, they are incapable by any reasonable construction or inference of being extended so far as to even tend to show that Berkenfield had authority, or attempted to assert it, to exercise in behalf of appellants their right to stop and reclaim the goods while in transit.

Upon the other aspect of the question as to the right of a carrier to make delivery to the consignee without producing the bill of lading, or in other words, in whom was vested the legal title to the whiskey in controversy, the case of Lake Shore and M. S. Ry. Co. v. Nat. Live Stock Bank, 178 Ill. 506, seems to be decisive.

It will not, we suppose, be disputed that a delivery by a carrier at the place of destination, to the consignee, in whom is vested the unqualified legal title to the goods, is sufficient to protect the carrier against further liability, whether the delivery was made upon the production or delivery of the bill of lading or not.

Parts of the opinion in the case last referred to, are as follows :

Schlesinger v. West Shore R. R. Co.

" The effect of a consignment of goods in a bill of lading is to vest the property therein in the consignee. A delivery of goods to a common carrier consigned to a particular person, without specific directions different from ordinary usage, is constructively a delivery to the consignee. Where the vendee is the consignee, the delivery of goods to a common carrier without qualifications, consigned to that vendee, is in law a constructive delivery to the consignee from the time of shipment and the commencement of the carriage. ' It is well settled that delivery of goods to a common carrier  *   *   *  for conveyance to him (the purchaser), or to a place designated by him, constitutes an actual receipt by the purchaser. In such cases the carrier is in contemplation of law, the bailee of the person to whom—not by whom—the goods are sent, the latter, in employing the carrier, being considered as an agent of the former for that purpose.' Benjamin on Sales, 2d Am. Ed., Par. 693, p. 648."

And again, on page 518 :

" By the consignment and delivery of the goods to the defendant carrier to be conveyed to the consignee, without condition or qualification, the property in the goods became vested in the consignee, and could be affected, so far as the consignor was concerned, only by the right of stoppage *in transitu.*"

It is not claimed that there were any conditions or qualifications connected with the delivery of the whiskey by appellants to the carrier, beyond the fact that, as expressed on the face of the bill of lading, it was consigned to Kemper, in the care of Berkenfield's express. .

Kemper was the consignee. He appearing and claiming the goods, and they having been delivered to him before, so far as appears either expressly or by intendment from any offered evidence, the appellants had exercised or sought to exercise any possible right they might have had to reclaim the property, the liability of the carrier was at an end.

The Superior Court rightly directed the verdict in favor of the defendants, and the judgment is affirmed.

Mr. Justice Freeman dissents.