William H. Hoops, Defendant in Error, v. Wells Fargo & Company, Plaintiff in Error.

### Gen. No. 17,655.

1. CARRIERS—*how express shipment must be delivered.* Express companies must deliver goods to the consignee in person or to his authorized agent at his residence or place of business.

2. CARRIERS — *when express shipment is delivered properly.*
Where an express company is directed to deliver a shipment
to a person in care of a steamship, a delivery to the steamship
is proper if the consignee was not on the steamship at the
time of the delivery and the driver was unable to find him.

3. CARRIERS—*when delivery of express shipment to unauthorized
agent is sufficient.* Where an express company is directed to
deliver a shipment to a person in care of a steamship and, the
consignee not being on board the vessel at the time of delivery,
the driver makes delivery upon its docks to a receiving clerk
of the steamship company, who had no authority to receive the
package but whose act is ratified by the company, the package
is delivered to the steamship and the express company is not
liable for a delay in a subsequent delivery to the consignee.

Error to the Municipal Court of Chicago; the HON. PERRY L.
PERSONS, Judge, presiding. Heard in the Branch Appellate Court
at the October term, 1911. Reversed with finding of fact. Opinion
filed January 23, 1913.

HOLT, WHEELER & SIDLEY, for plaintiff in error.

SILBER, ISAACS, SILBER & WOLEY, for defendant in
error; MARTIN J. ISAACS and JAMES D. WOLEY, of coun-
sel.

MR. JUSTICE McSURELY delivered the opinion of the
court.

Wells Fargo & Company sued out of this court a
writ of 'error to review a judgment obtained against
it by William H. Hoops in the municipal court upon a
trial by the court. The facts are as follows: William
H. Hoops, hereinafter called plaintiff, was the owner
of a coat and two steamer rugs, claimed to be of the
value of two hundred dollars, which he caused to be
shipped from Merced, California, to San Francisco,
and marked "William Hoops, care of Steamship Man-
churia, San Francisco, Cal." The shipment was
transported to San Fracisco, and a driver of the de-
fendant took the same to the docks of the Pacific Mail
Steamship Company, which company is the owner of
the steamship Manchuria. Mr. Hoops was not on the

steamship at this time, and the driver, failing to find him, delivered the shipment to G. P. Fahs, an employee of the steamship company. Fahs had charge of outgoing baggage and was at the time of the delivery of this package in the receiving office on the docks of the steamship company, the package being left in the receiving office. The package was taken in charge by the steamship company, but through an oversight on its part was not placed aboard the Manchuria. On the day the shipment was so delivered the plaintiff asked the defendant if his property had been delivered, and was informed that it had been sent aboard the boat. After the steamer sailed the steamship company forwarded the package by the next steamer and later it was tendered to Mr. Hoops, who refused to accept it and brought this suit, claiming a conversion of the property.

There is practically no dispute as to the facts in the case, and we take it that both counsel agree upon the general rule that express companies are required to deliver goods to the consignee in person, or to his authorized agent, at his residence or place of business. Hutchinson on Carriers, vol. 2, p. 716; Gulliver v. Adams Exp. Co., 38 Ill. 503.

The first question presented for the decision of this court is, did the direction by the plaintiff to deliver to "William Hoops, care of Steamship Manchuria," make a delivery to the steamship Manchuria a good delivery of said shipment if the carrier was unable to find William Hoops? There is abundant precedent for holding a delivery under such circumstances to be a good delivery. In Hutchinson on Carriers, vol. 2, sec. 676, the rule is stated as follows: "Goods shipped to one person as consignee in care of another should be delivered to the consignee, and in case he cannot be found then to the one in whose care they are shipped."

In Chicago & N. W. R. Co. v. Merrill, 48 Ill. 425 (427), the court says:

"It is true that on the box were written, besides the name of Page, as consignee—the words 'care of American Express Co.' But in the receipt given to the appellee by the company, Page was named as the consignee, and nothing is said about the express company, and we understand these words upon the box as merely indicating that, if Page, the consignee, could not be found to receive the goods, the appellant might. deliver them into the care of the express company."

This case was followed and cited in Schlesinger v. West Shore R. Co., 88 Ill. App. 273. In Commonwealth v. Peoples' Exp. Co., 201 Mass. 564, the court says:

"The defendant was not named as consignee in the shipping order, but was referred to by the phrase, 'c/o Peoples Express Co.' The addressing of a package to a consignee in the care of a third person, between the consignor and consignee and the carrier, and as to the liability of the latter, and in the absence of known limitations upon the scope of the authority given, * * * confers upon such third person the right to receive the goods, and ordinarily constitutes him the proper person to whom to make delivery."

And the New York Supreme Court in Russell & Annis v. Livingston & Wells, 16 N. Y. 515, says:

"Ordinarily, the address of a package to the care of anyone is an authority to the carrier to deliver it to such person."

This rule is repeated with approval in Ela v. American Merchants' Union Exp. Co., 29 Wis. 611, and Bristol v. Rensselaer & Saratoga R. Co., 9 Barb. (N. Y.)158. We are referred to no cases which state any other rule.

The next question is, was the package delivered to the steamship Manchuria when it was delivered to Fahs, the receiving clerk in the employ of the Pacific Mail Steamship Company, upon its docks, which company is the owner of the steamship Manchuria? It is not disputed that the package came into the hands

of the steamship company, and according to the testi-
mony of Fahs it was through the fault of the steam-
ship company in overlooking the package that it was
not placed on board the Manchuria. Fahs testifies
that he had no authority to receive this package, but
that nevertheless he did receive the same; and the
subsequent conduct of the steamship company indi-
cates that it ratified and affirmed this act of its em-
ployee. It is of course obvious that delivery to a
steamer must be to some individual connected with it,
and delivery to Fahs under the circumstances in this
case must be held to be a delivery to the steamer
Manchuria.

In Hutchinson on Carriers, vol. 2, sec. 120, the au-
thor says:

"Delivery to a ship or vessel is complete as soon
as the master, mate or any other agent of the owner
receives the goods; and they may be received upon the
ship, on the wharf, on the beach or at a warehouse, or
at any other place at which an agent duly authorized
may agree to receive them, and in all such cases the
liability of the master and owners as carriers com-
mences at the moment of such acceptance. It has
been decided in a great number of cases that it is not
necessary that the goods should be taken on board in
order to fix the liability of common carriers upon the
owner."

And in the case of "The Idaho," reported in 11
Blatchford's Circuit Court Reports 218, Eastern Dis-
trict of New York, the court says:

"I cannot doubt that this delivery to the wharf con-
stituted a good delivery of the cotton to the vessel, and
that at the moment of such delivery the cotton was in
the custody of the vessel and was in law shipped on
the vessel. It was a delivery to and a receipt by the
vessel for the purpose of shipment. It was the com-
mencement of the liability of the carrier, which dates
from the time the goods are received by him for the
purpose of transportation."

In Petersburg, N. N. & N. Steamship Line v. Nor-

folk-Virginia Peanut Co., 172 Fed. Rep. 321, 96 C. C. A. 383, the court says:

"The general law as to what constitutes the delivery to the vessel is thus stated in Parsons on Shipping and Admiralty, p. 183: 'The reception of the goods by the master on board of the ship, or at a wharf or quay near the ship, for the purpose of carriage therein, or by any person authorized by the owner or master so to receive them, or seeming to have this authority by the action or assent of the owners or master, binds the ship for the safe carriage and delivery of the goods.'"

The court also says in the same case:

"The shipper fully parted with the possession of his goods when he delivered them at the wharf, and had no longer any control or right of control over them."

The cases cited by counsel for plaintiff do not deal with facts similar to those in the case at bar, nor with the questions here before us, and therefore cannot be considered as in point.

Finding, as we do, that the evidence shows a good delivery by the defendant, it is unnecessary to consider the other points argued by both counsel in their briefs. Under the facts in evidence herein there can be no recovery against the defendant, and therefore the judgment will be reversed and judgment for the defendant, Wells Fargo & Company, entered in this court.

*Reversed with finding of fact.*