## C. B. Ensign, Plaintiff in Error, v. Illinois Central Railroad Company, Defendant in Error.

### Gen. No. 17,369.

1. CARRIERS—*when not liable for failure to deliver to one who holds bill of lading.* Where a carrier receives a shipment of coal from a party who is both consignor and consignee, and the bills of lading do not specify that the coal shall not be delivered without their production and contain no words of negotiability, the carrier on delivery of the coal to one who has diversion orders from the consignee, is not liable to one who receives the bills of lading as security for a loan to enable the one to whom the coal was delivered to pay for it.

2. BILLS OF LADING—*when carrier may deliver without requiring production.* In the absence of a statutory requirement, or an agree-

ment in the bill of lading, that the goods shall not be delivered without its production, the carrier may legally deliver a shipment that is billed straight to the consignee, without requiring production of the bill of lading.

3. CARRIERS—*consignee presumably the owner.* The consignee is presumably the owner of the goods and is entitled to demand a delivery of them subject only to the rights of stoppage *in transitu,* and the carrier may safely deliver to him provided it has no notice of a better right in favor of an adverse claimant.

4. BILL OF LADING—*effect of transfer.* A bill of lading is not negotiable like a bill of exchange, but is a symbol or representative of the goods themselves; and the rights arising out of its transfer do not correspond to those arising out of the indorsement of a negotiable promise for the payment of money, but to those arising out of a delivery of the property itself under similar circumstances.

5. BILL OF LADING—*as symbol of property and contract of transportation.* A bill of lading is both the symbol of the property and evidence of the carrier's contract to transport it; as the former, it may be transferred; but as the latter, it is a chose in action and as such it is not at common law assignable.

6. PRACTICE—*effect of section 18 of the Practice Act.* The rights of an assignee of a non-negotiable instrument under section 18 of the Practice Act are not greater than they were at common law except that he may sue in his own name.

7. CARRIERS—*duty to deliver goods to true owner.* A carrier is bound to deliver goods to the true owner or to one legally entitled to the possession thereof if the carrier has due notice of such rights before it delivers to the consignee or to his order without the bill of lading.

8. BILLS OF LADING—*duty of assignee to notify carrier.* The assignee of a bill of lading must give prompt notice of his rights to the carrier before the goods are delivered by it to another, if he desires to hold the carrier for a conversion of his property.

9. BILLS OF LADING—*how transferred.* A bill of lading is transferrable by indorsement and delivery and transfers to the indorsee or holder such rights to, or property in the goods, as it was the intention of the parties, gathered from all the circumstances to pass.

10. CARRIERS—*burden of proof.* Where plaintiff, the assignee of the bill of lading for a shipment of coal, sues defendant carrier for damages resulting from its failure to deliver the coal to him, the burden of proof rests with plaintiff to prove notice to defendant of his rights to possession of the coal before delivery to a third party at the order of consignee.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed May 21, 1913.

FRANCIS S. WILSON, for plaintiff in error.

VERNON W. FOSTER, for defendant in error; JOHN
G. DRENNAN and WALTER S. HORTON, of counsel.

MR. PRESIDING JUSTICE DUNCAN delivered the opin-
ion of the court.

C. B. Ensign, plaintiff in error, sued the Illinois
Central Railroad Company, defendant in error, and
Zeigler Coal Company, to recover the sum of $700 as
damages for their failure to deliver to him four cars
of coal. In a trial before the court without a jury,
judgment was rendered in favor of defendant in error
after plaintiff in error had taken a nonsuit as to the
coal company.

The facts are that said four cars of coal were con-
signed by the Zeigler Coal Company, at Zeigler, Illi-
nois, to itself at Chicago, Illinois, *via* the defendant in
error's railroad, from March 20th to March 23rd, 1906.
The coal company received four bills of lading from the
defendant in error for the four cars of coal, in which
the Zeigler Coal Company was named as consignee
without any qualifying words, "or order," "or as-
signs," or other words of similar import. The freight
on the coal was collected from said coal company by
the railroad company. On March 27, 1906, the Zeigler
Coal Company sold the four cars of coal in question to
the Merchants Coal Company. Plaintiff. in error on
said last date arranged to loan one Hiland, under the
name of Merchants Coal Company, the sum of $359.23,
the purchase price of said coal, but the note of plain-
tiff in error, a thirty day note, was signed by Hiland,
"Franklin County Coal Company." The Zeigler Coal
Company then indorsed the four bills of lading as fol-
lows: "Deliver Merchants Coal Company or order,
Zeigler Coal Company." An agent of the Zeigler Coal
Company then went to the office of Hiland and then
to the office of plaintiff in error to get the money for
the coal which he was advancing to Hiland to enable

Ensign v. Illinois Central R. Co., 180 Ill. App. 382.

him to buy it. The agent refused to accept the check of plaintiff in error for said amount until it was certified, and thereupon plaintiff in error gave his check to the coal company's agent and directed him to get it certified and bring back to him the bills of lading. The agent of the coal company got the check certified by the bank, and delivered the bills of lading to an agent of Hiland. At the same time the Zeigler Coal Company made out and delivered to Hiland's agent diversion orders to the agent of defendant in error, directing it to forward the four cars of coal to the Franklin County Coal Company by delivering the cars to the Chicago Terminal Transfer Railroad Company at Riverdale, Illinois, twenty miles from Chicago. No one represented the defendant in error in these transactions. Hiland afterwards on the same day delivered to plaintiff in error the said bills of lading endorsed in blank by the Merchants Coal Company, but did not deliver to him the diversion orders. Hiland transacted his business in the name of both Coal Companies, Merchants Coal Company and Franklin County Coal Company, apparently using the one or the other name indiscriminately, as suited his pleasure or convenience. The diversion orders were on March 31, 1906, delivered to the agent of the defendant in error by a representative of the Franklin County Coal Company, and the cars of coal were delivered, as therein directed, by defendant in error without the production of the bills of lading, three cars at 10:50 A. M., April 3, 1906, and the other car at 8:20 A. M., April 4, 1906.

Plaintiff in error first contends that as he was the bona fide holder and assignee of the four bills of lading for value, as above set forth, the defendant in error was bound to deliver to him or to his order the four cars of coal in question on production to it of said bills of lading, as evidence of his right, and that after said bills of lading were assigned by the Zeigler Coal Company and delivered to him the defendant in error could not legally deliver the coal to the order of the Zeigler

Coal Company without requiring the production of the bills of lading evidencing the right of the coal company to order such delivery. The bills of lading in question did not specify that the coal should not be delivered without their production, and they contained no special negotiable words. The shipments were what are called "straight shipments," every car of coal having been shipped direct to the Zeigler Coal Company without any limitation whatever. The contract of defendant in error, as set forth in the bills of lading, required it to deliver the coal to the Zeigler Coal Company and at that time the Zeigler Coal Company was the consignor and the consignee and the absolute owner of the coal. The defendant in error complied with all the requirements of its contracts with reference to the delivery of the coal, as expressed in the bills of lading, when it delivered the coal to the Franklin County Coal Company by direction of the Zeigler Coal Company. In the absence of a statutory requirement, or an agreement in the bill of lading, that the goods therein named shall not be delivered without its production, the carrier may legally deliver a shipment that is billed straight to the consignee, without requiring the production of the bill of lading. The consignee in such a case is presumably the owner of the goods and is entitled to demand a delivery of them, subject only to the rights of stoppage *in transitu* and the carrier may safely deliver to him, provided the carrier has no notice of a better right in favor of an adverse claimant. *Nashville, C. & St. L. R. Co. v. Grayson County Nat. Bank,* 100 Tex. 17; *Nebraska Meal Mills v. St. Louis S. W. Ry. Co.,* 64 Ark. 169; *Anchor Mill Co. v. Burlington, C. R. & N. Ry. Co.,* 102 Iowa 262; *Schlesinger v. West Shore R. Co.,* 88 Ill. App. 273; *Lake Shore & M. S. Ry. Co. v. National Live Stock Bank,* 178 Ill. 506.

"A bill of lading, even when in terms running to order or assigns, is not negotiable, like a bill of exchange, but a symbol or representative of the goods

themselves; and the rights arising out of the transfer of a bill of lading correspond, not to those arising out of the indorsement of a negotiable promise for the payment of money, but to those arising out of a delivery of the property itself under similar circumstances." *Stollenwerck v. Thatcher,* 115 Mass. 224. See also *Porter on Law of Bills of Lading,* Sec. 438; *Hutchinson on Carriers,* vol. 1, sec. 175. A bill of lading is "both the symbol of the property which is delivered to the carrier for transportation, and evidence of the carrier's contract to transport and deliver that property. As a symbol of property, it may be transferred, but as a contract with the carrier, it is a chose in action, and as such it is not at common law assignable." 2 *Daniel on Negotiable Instruments,* sec. 1745 a.

It is evident from said authorities that the only action, if any, that could be maintained at common law by plaintiff in error in his own name against defendant in error would be an action for the wrongful conversion of the coal, after demand made for the delivery of the coal to him. Our Supreme Court has virtually so decided in *Knight v. St. Louis, I. M. & S. Ry. Co.,* 141 Ill. 110, in which case, after deciding that the assignee could not maintain a suit on the contract in his own name, said:

"It is difficult to see how the assignee of that express contract could ignore it, and sue upon an implied liability to carry and deliver. When it is admitted that the bills of lading are non-negotiable, it must follow that the carrier can make any defense against an alleged failure to carry according to his contract, when sued by one who has become the owner of the goods by a transfer of the bill of lading, which he could have made against the shipper himself. His duty towards the goods is fixed by the terms of his contract, no matter who may be the owner of them."

In the absence of a statute in this state making bills of lading negotiable or requiring the carrier not to deliver the goods to any one without requiring the production of the bill of lading in such straight shipments

showing his right to possession of the property, or accounting properly for the loss or want of possession thereof, we are unable to see how plaintiff in error could maintain his suit against defendant in error. Our Uniform Bills of Lading Act, approved June 5, 1911, (Session Laws 1911, p. 228), while not in force when this suit was brought, expressly declares that such bills of lading as are in question here are non-negotiable or straight bills. While section 18 of our Practice Act allowed plaintiff in error to sue in his own name on the bills of lading on compliance with the terms of that section; yet, the statute simply declares the principles of the common law that are applicable to suits by assignees on non-negotiable instruments, and it changes the common law in no particular, except that at common law the suit on such an instrument by an assignee had to be brought in the name of the assignor. The assignee's rights are otherwise no greater or more extended under this statute than they were at common law and are identical with the assignor's rights under the contract at the time the debtor received notice of the assignment. No. 18943, *Hibernian Banking Ass'n. v. City of Chicago,* opinion filed by this court March 12, 1913, *post*—, and not reported.

It is true that a common carrier is bound even in case of a straight shipment to deliver the goods to the true owner or to the one legally entitled to the possession thereof, if the carrier has due notice of such rights before he delivers to the consignee or to his order without the bill of lading. It is up to the holder, as assignee, of such a bill of lading to give prompt notice of his rights to the carrier before the goods are delivered by it to another, if he desires to hold the carrier for a conversion of his property. In this case, it does not even positively appear that plaintiff in error was legally entitled to hold the actual possession of the coal. No such an agreement with Hiland or Zeigler Coal Company is proved. The note to which the bills of lading were to stand as collateral was a thirty day

note. The coal was certainly not the absolute property of plaintiff in error. It may be that the coal itself was to be held by plaintiff in error as a pledge until the note was paid or otherwise secured, but no such agreement was proved. "All broad assertions of the negotiability of the bill of lading, when examined in the light of their context and of their actual application to the very cases in which they are unguardedly made by the court, will be found equivalent merely to a statement that the bill is transferable by indorsement and delivery and that such endorsement and delivery transfers to the indorsee or holder such rights to, or property in the goods, as it was the intention of the parties, gathered from all the circumstances, to pass." *Porter on Bills of Lading,* sec. 438.

Plaintiff in error insists also that he gave notice to the defendant in error that he was the bona fide holder of the bills of lading and entitled to receive the coal in question, while the coal was in its possession about March 29, 1906, and also that he by a letter written on April 3, 1906, again notified the defendant in error that he held such bills of lading and that he would expect the coal to be delivered to him when it arrived in Chicago. We have examined the evidence carefully and find that it fails to establish any such notice before the coal was delivered by the defendant in error to the Franklin County Coal Company. It does not appear that the first notice spoken of was given to any one representing or authorized to represent the defendant in error as an agent or otherwise. It was simply given to a person unknown to plaintiff in error, and it was not even shown that the unknown person was engaged in the transaction of any business for defendant in error. The second notice by letter was not shown to have been delivered to defendant in error or posted in time for delivery to it by mail before the coal was delivered by it. The burden of proof rested with the plaintiff in error to prove notice. to defendant in error of his right to the possession of the coal before delivery there-

of by it to the Franklin County Coal Company. Until such notice was served on it, defendant in error had the right under the bills of lading to deliver the coal to the order of the Zeigler Coal Company by an assignment of the bill of lading or by an assignment or order in a separate instrument.

The judgment of the lower court is, therefore, affirmed.

*Judgment affirmed.*