### The Chicago, Rock Island & Pacific Railway Company, Appellant, v. North American Cold Storage Company, Appellee.

### Gen. No. 31,284.

1. SALES—*bill of lading as not passing title.* The legal title to goods shipped over a common carrier is not evidenced by the bill of lading but by the contract of sale between buyer and seller.

2. CARRIER—*what bill of lading represents on part of carrier.* A non-negotiable bill of lading is a receipt given by the carrier for goods shipped and in addition an agreement that the carrier will transport the goods according to the terms expressed in the bill of lading.

3. SALES—*seller's transfer of bill of lading as affecting buyer's title.* Title to goods shipped passes to the buyer by the contract of sale and the carrier cannot obtain title thereto by paying to the seller, who was also consignee, the amount of the draft which the buyer had not paid and receiving therefor the bill of lading and assignment of the seller's interest in the shipment.

4. CARRIERS—*delivery of goods to buyer without his presenting the bill of lading.* A common carrier has no right to deliver to one who has bought a shipment of goods, said shipment without the buyer's presenting the bill of lading according to instructions of the seller, who was also consignee, to the carrier, or without authority to do so from said consignee.

5. APPEAL AND ERROR—*value of deposition evidence on appeal.* The Appellate Court is in as good a position as trial judge or jury to determine the value of evidence which is presented on the trial in the form of a deposition.

6. REPLEVIN—*right of carrier to replevin shipment delivered by mistake.* A carrier that has delivered a shipment by mistake to the buyer thereof before the latter has produced the bill of lading, contrary to the directions of the seller, who was also consignee, may maintain an action of replevin to recover the shipment.

7. REPLEVIN—*demand.* A common carrier, before starting suit for replevin of a shipment delivered by mistake without production of the bill of lading, need not demand the goods upon it appearing they are claimed by the one receiving them to be his and that he lays claim to possession.

8. REPLEVIN—*demand.* A common carrier, before starting suit for replevin of a shipment delivered by mistake without production of the bill of lading, need not demand the goods upon it appearing they were wrongfully obtained by the one that received them.

9. CARRIERS—*who is delivering carrier.* A common carrier, treated by all the parties to its suit to replevin a shipment mistakenly delivered without a bill of lading being produced, as the delivering carrier, and which had actually delivered the shipment within a mile of the destination, is the delivering carrier rather than the railway which switched them the final mile distance to their destination.

10. REPLEVIN—*when variance between proof and affidavit must appear on trial.* To be heard on appeal, a variance between proof and affidavit in a replevin suit must be specifically pointed out in the trial in municipal court.

11. REPLEVIN—*case made by evidence in municipal court.* Under Cahill's St. ch. 37, ¶ 428, providing no statement of claim is necessary to be made in writing in a municipal court fourth-class case, in replevin, it is sufficient if the case is made by the evidence.

12. REPLEVIN—*necessity of motion for instructed verdict to secure entry of judgment on appeal.* Unless the plaintiff in a replevin suit in municipal court moves for an instructed verdict in his favor at the close of the evidence, he can only have the judgment against him reversed but cannot have judgment in his favor entered in the Appellate Court.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. JOHN H. LYLE, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and remanded. Opinion filed June 13, 1927.

CHAS. T. SCHWARZ and HARRY E. BOE, for appellant.

JOSEPH M. CONNERY and J. J. COOKE, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action of replevin against the defendant to recover possession of 646 boxes of apples, and 606 of the boxes were taken on the writ and delivered to the plaintiff. Afterwards there was a trial and a verdict in favor of the defendant finding the right to the possession of the property was not in the plaintiff and defendant's damages were fixed at the sum of $130.56, judgment was entered on the verdict and a writ of *retorno habendo* ordered and plaintiff appeals.

The record discloses that in December, 1925, H. R. Boomer and Otto Steinberg were doing business in Idaho and vicinity as the Boomer Produce Company, dealing in apples and other produce; that on December 19, 1925, the Boomer Produce Company purchased a carload of apples, being the apples in question, from the Northwestern Orchard Company at Apple Valley, Idaho. On that date the apples were in a railroad car at Apple Valley, Idaho, for transportation and the Oregon Short Line Railroad Company issued to the Boomer Produce Company its bill of lading. The bill shows that the apples were to be transported to Denver, Colorado, and the Boomer Produce Company was named as consignee. It further appears from the evidence that while the car was en route to Denver the Boomer Produce Company sold the car of apples to the Larson Produce Company of Chicago. On Decem-

ber 19th when the apples were sold to the Larson Produce Company, the Boomer Produce Company ordered the transportation company to divert the car to the Boomer Produce Company at Chicago and to advise the Larson Produce Company. On the 26th of December the Boomer Produce Company wired the transportation Company showing the diversion order above mentioned, and further advised that the car be shipped in care of the North American Cold Storage Company, the defendant. In accordance with directions given, the car of apples was routed over plaintiff's railroad from Omaha to Chicago. When the apples arrived in Chicago—in the late days of December, 1925—the Pennsylvania Railroad Company which operated a switch track to the plant of the North American Cold Storage Company, delivered the car to the defendant's plant. Shortly prior to that time the Continental and Commercial National Bank of Chicago advised the defendant that it had received for collection from the Boomer Produce Company of Idaho a draft for $718.20, drawn on the Larson Produce Company for the car of apples, and that the bill of lading accompanied the draft. The defendant advised the bank to take up the matter of payment of the draft direct with the Larson Produce Company, and this was apparently done, but the draft was not paid and about the 28th of December, the apples were unloaded and placed in the defendant's cold storage house by the defendant for the Larson Produce Company. The apples were delivered without the production of the bill of lading and without any order from the consignee.

The evidence further shows that shortly thereafter plaintiff demanded the return of the apples, but the demand was refused; that the Boomer Produce Company made a claim against the railroad company for delivering the apples to the defendant without any order from the Boomer Produce Company and without

the bill of lading; that the railroad company thereupon paid the Boomer Produce Company the amount of the draft, $718.20, and took an assignment from the Boomer Produce Company of all its interest in the apples and was also given the bill of lading; that about this time the railroad company brought the present action of replevin and at the same time brought another action against the Larson Produce Company to recover 150 boxes of the apples which had theretofore been delivered to it by the storage company. The cases were consolidated for hearing and there was a verdict in the Larson Produce Company's case in favor of the plaintiff and a verdict in the instant case, as above stated, against the plaintiff and we are further advised that the court granted a new trial in the *Larson* case, but that matter is not before us.

There is some argument between the parties as to whether the Boomer Produce Company or the Larson Produce Company was the consignee of the car of apples. We think there is no room for argument on this point. The consignee named in the bill of lading is the Boomer Produce Company and the fact that the bill of lading specified that the railroad company was to advise the Larson Produce Company did not in any manner change the consignee. But plaintiff further contends that the Boomer Produce Company was not only the consignee but that it was also the owner of the apples when they arrived in Chicago and that afterwards when plaintiff paid the Boomer Produce Company the $718.20 and took an assignment to it from the Boomer Produce Company, the legal title to the apples was in the plaintiff. This argument seems to be based upon the contention that the ownership of the apples was evidenced by the bill of lading. We think this argument is unsound. The bill of lading did not represent the contract between the Boomer Produce Company and the Larson Produce Company. That contract, the evidence discloses, was an oral one

entered into between the Boomer Produce Company and the Larson Company over the long distance telephone. The evidence shows that Steinberg from Idaho telephoned a representative of the Larson Produce Company at Chicago while the car of apples was en route between Idaho and Denver and that an agreement was entered into whereby the Larson Produce Company purchased the car of apples from the Boomer Produce Company. The bill of lading was a receipt given by the carrier for the apples and in addition it was an agreement that the carrier would transport the apples according to the terms expressed in the bill of lading. *Rudin v. King-Richardson Co.,* 311 Ill. 513. The court there said (p. 521): "It (the bill of lading) does not represent the contract between the vendor and the vendee. It is, however, sometimes material to consider the bill in determining the contractual relation of the parties." Holding as we do that the title to the apples passed from the Boomer Produce Company to the Larson Produce Company while the apples were moving from Idaho to Denver, plaintiff did not obtain the legal title to them when it paid the Boomer Produce Company some weeks later and secured the assignment of the Boomer Produce Company's interest in the apples. But the fact that the Larson Produce Company was the owner of the apples when the car arrived in Chicago did not authorize the railroad company to deliver them to the Larson Produce Company or to the defendant, its representative, without an order from the consignee authorizing the railroad to do this or without the production by the Larson Produce Company of the bill of lading. The evidence shows that the bill of lading was not produced, but, on the contrary, was surrendered to the railroad company by the Boomer Produce Company when the latter was paid the $718.20. And the evidence further shows that the consignee, the Boomer Produce Company, gave no order to the rail-

road company to deliver apples to the Larson Produce
Company, or to its representative, the defendant, and
it was its intention that this should not be done until
and unless the draft was paid, so that the delivery of
the apples was unauthorized. The bill of lading in
question plainly states on its face that it is "not nego-
tiable" and is, therefore, what is known as a straight
bill of lading. (Section 6 of the Bill of Lading Act
of August 29, 1916; 39 Stat. L. 538.) And by section
8 of that act, it is provided that a carrier, in the
absence of some lawful excuse, is bound to deliver the
goods upon demand to the consignee named in the bill,
if, upon such demand, the bill of lading is produced.
By section 9, it is provided that a carrier is justified
in delivering the goods to the "consignee named in a
straight bill of lading." Section 10, a carrier who de-
livers goods to one who is not lawfully entitled to
the possession of them is made liable to the party
having the right to the possession of the goods. Sub-
stantially the same provisions are found in our Uni-
form Bills of Lading Act, chapter 27, sections 4, 8, 11,
12 and 13, Cahill's St. ch. 27, ¶¶ 5, 9, 12, 13 and 14.
And by section 40 of our Uniform Bills of Lading Act,
Cahill's St. ch. 27, ¶ 41, it is provided that "Where
goods are shipped by the consignor in accordance with
a contract or order for their purchase, the form in
which the bill is taken by the consignor shall indicate
the transfer or retention of the property or right to
the possession of the goods as follows:   *   *   *

"(b) Where by the bill the goods are deliverable
to the seller or to his agent, or to the order of the
seller or of his agent, the seller thereby reserved the
property in the goods. But if, except for the form of
the bill, the property would have passed to the buyer
on shipment of the goods, the seller's property in the
goods shall be deemed to be only for the purpose of
securing performance by the buyer of his obligations

under the contract." And section 20 of the Uniform Sales Law, Cahill's St. ch. 121a, ¶ 23 is substantially the same. In the *Rudin* case, *supra,* the court held under section 40, above quoted, that where the title to the goods had passed to the purchaser and the bill of lading showed that the seller was the consignee, but that this was only for the purpose of seeing that the purchaser performed his obligations under the contract, the property could not be properly delivered by the carrier unless the purchaser met his obligation by paying for the goods before delivery. But counsel for the defendant say that it has been held by this court that goods may be delivered by the carrier to the consignee without producing the bill of lading and in support of this the cases of *Scovern v. Chicago, M. & St. P. Ry. Co.,* 189 Ill. App. 126; *Ensign v. Illinois Cent. R. Co.,* 180 Ill. App. 382; *Hoops v. Wells Fargo & Co.,* 176 Ill. App. 620, and *Schlesinger v. West Shore R. Co.,* 88 Ill. App. 273, are cited. An examination of these cases shows that it was only held that if the carrier delivers the goods to the consignees without the bill of lading the delivery will be valid where the bill of lading is a straight or non-negotiable bill of lading. But these cases are inapt here, where the apples in question were not delivered to the consignee, which was the Boomer Produce Company but to the Larson Produce Company. The delivery in question by the carrier to the Larson Produce Company or its representative, the defendant, was unwarranted.

There is no merit in the contention made by the defendant that the Larson Produce Company purchased the apples from Steinberg and not from the Boomer Produce Company. It is true that Steinberg testified, by deposition, that he bought the apples from the Boomer Produce Company and sold them to the Larson Produce Company, but his testimony is at variance with the facts as disclosed by the evidence

530        Appellate Courts of Illinois.

Chicago, R. I. & P. R. Co. v. North American C. S. Co., 244 Ill. App. 522.

and, in our opinion, is worthy of little or no credence, because the evidence shows by documents in the record and by other evidence that Steinberg was engaging in dealing in apples with Boomer; that they were doing business as the Boomer Produce Company; that while the apples were en route to Denver they were sold to the Larson Produce Company and the Boomer Produce Company drew a draft on the Larson Produce Company for the price of the apples, $718.20, sending the draft together with the bill of lading to a Chicago bank for collection; that after the Larson Produce Company refused to pay the draft and after it had received the apples the Boomer Produce Company made a claim against the railroad company for the price of the apples and that the railroad company paid the $718.20 to the Boomer Produce Company and took an assignment from the Boomer Produce Company to itelf for the apples. In these circumstances, Steinberg ought not be permitted to stultify himself by saying that the apples were his and not the property of the Boomer Produce Company. We are in as good a position to determine this question as were the jury or the trial judge, because Steinberg's testimony was in the form of a deposition and the documentary evidence is of such a character as to convince a reasonable person that the apples were sold to the Larson Company by the Boomer Produce Company and not by Steinberg, and this is the testimony of Boomer.

The carrier, plaintiff, having delivered the apples through mistake to the defendant as the representative of the Larson Produce Company, it may maintain an action of replevin to recover them. 10 C. J. 269; *American Merchants Union Exp. Co. v. Willsie*, 79 Ill. 92; *Milk Dealers Bottle Exch. v. Schaffer*, 224 Ill. App. 411. In Corpus Juris it is said, ''where through mistake, fraud or otherwise the carrier has been induced to deliver goods to a person not entitled thereto, and he refuses to return them, the carrier may maintain

an action against him for the recovery of the goods or for their value.'' In support of this the *Willsie* case, *supra,* is cited. In that case the goods were sent by express marked C.O.D. Upon arrival of the goods the party to whom they were sent was notified and through misrepresentation he obtained possession of the goods without paying for them and it was held that the express company could maintain an action of replevin for the goods. But the defendant contends that the evidence fails to show that plaintiff made a demand for the apples before suit was instituted and, therefore, the action will not lie. This contention is without merit. Plaintiff offered evidence tending to show that it had made a demand for the apples, but some of this evidence was erroneously excluded. Moreover, it appears from the evidence without dispute that the Larson Produce Company was maintaining that it owned the apples and was entitled to the possession of them by its agent, the defendant, and where this appears, it is obvious that a demand would be unavailing and in these circumstances no demand is necessary. *National Bond & Investment Co. v. Zakos,* 230 Ill. App. 608; *Kee & Chapell Dairy Co. v. Pennsylvania Co.,* 291 Ill. 248; *Rudin v. King-Richardson Co., supra.* In discussing the question of the necessity of a demand before an action of replevin is instituted, we said in the *Zakos* case (p. 612), ''no demand is necessary before bringing suit where the evidence discloses that such a demand would have been unavailing. The object of a demand is to afford the defendant an opportunity to restore the property to the one entitled to possession without being put to the expense and annoyance of litigation. But where it appears that the defendant either before the action was instituted or upon the trial contests the plaintiff's rights upon the merits, or where it appears that a demand would have been of no avail, then none is required, for the law never requires the doing of a useless thing,'' citing author-

532     APPELLATE COURTS OF ILLINOIS.

Chicago, R. I. & P. R. Co. v. North American C. S. Co., 244 Ill. App. 522.

ities. And in the *Kee & Chapell Dairy Co.* case, the court said (p. 255): "Even though this be considered not sufficient as a demand, it is sufficient to show that a demand would have been unavailing and therefore unnecessary, as the effect of appellant's statement was that it would not surrender the property without a writ being issued. While demand is usually necessary where the defendant comes into possession of the goods rightfully, yet where the circumstances show that demand would be unavailing such demand is not necessary. *Cranz v. Kroger,* 22 Ill. 74; *Johnson v. Howe,* 2 Gilm. 342." In the *Rudin* case the court said (p. 526) "all the circumstances show that a demand would have been unavailing, and where that is the case a demand is not necessary. (*Kee & Chapell Dairy Co. v. Pennsylvania Co.,* 291 Ill. 248.)" Since the evidence discloses that a demand would have been unavailing, none was necessary. Moreover, none was necessary because the apples were not rightfully obtained by the Larson Produce Company through its agent, the defendant.

The defendant further contends that plaintiff was not the delivering carrier and, therefore, cannot maintain this action, and it is argued that the delivering carrier was the Pennsylvania Railroad Company which delivered the car on the switch track at the side of plaintiff's cold storage building. The evidence shows that all of the parties treated the Rock Island Railroad, the plaintiff, as being the delivering carrier. It transported the car from Omaha to a point in Chicago, about a mile distant from defendant's plant and the Pennsylvania Railroad Company, who operated the switchtrack running to defendant's plant, delivered the car for plaintiff to the defendant. Under these circumstances plaintiff was the delivering carrier and the Pennsylvania Railroad Company was merely its agent. *Missouri Pac. R. Co. v. Reynolds-Davis Grocery Co.,* 268 U. S. 366.

A further point is made that there is a variance between the proof and the affidavit for replevin. No such contention was made on the trial and it is elementary that a variance must be specifically pointed out on the trial. By section 40 of the Municipal Court Act, Cahill's St. ch. 37, ¶ 428, no statement of claim is necessary in a replevin action. An affidavit is all that is required and this being a fourth-class case, in which no written pleadings are required, it is sufficient if a case is shown by the evidence. *Edgerton v. Chicago, R. I. & P. R. Co.*, 240 Ill. 311.

We have considered other contentions made in the briefs, but are of the opinion that they are not tenable and further that it would serve no purpose to treat them in detail here. Since there was no motion made by the plaintiff at the close of the evidence for an instructed verdict in its favor, we are unable to enter judgment in this court in favor of the plaintiff.

For the reasons we have given the judgment of the municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

TAYLOR, P.J., and THOMSON, J., concur.